IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| P&S LIMITED PARTNERSHIP, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civ. No. MJM-23-2562 |
| OLYMPUS PINES ACQUISITIONS, LLC, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiffs P&S Limited Partnership ("P&S"), Robert Schaechter, and Richard Perkins (collectively, "Plaintiffs") filed this civil action against Olympus Pines Acquisitions, LLC ("Olympus Pines") alleging breach of contract and seeking monetary relief, as well as declaratory relief terminating the contract. Olympus Pines filed a counterclaim alleging breach of contract and seeking monetary judgment and declaratory relief in its favor. This matter is before the Court on Plaintiffs' Motion for Summary Judgment, ECF No. 22, and Olympus Pines's Motion for Summary Judgment, ECF No. 23. The motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall deny Plaintiffs' motion and grant Olympus Pines's motion.

I.   BACKGROUND

   A.   Background on the Agreement

Plaintiffs Robert Schaechter and Richard Perkins are Maryland residents, plaintiff P&S is a Maryland limited partnership, and Olympus Pines is a Delaware limited liability company. ECF

1

No. 3-1 (purchase and sale agreement). On February 21, 2023, the parties entered into an agreement ("Agreement") for Plaintiffs to sell, and Olympus Pines to purchase, approximately 1.26 acres of land in Bowie, Prince George's County, Maryland. *Id.* at 1. Plaintiffs understood that Olympus Pines sought to purchase the property to build a car wash. *Id.* ¶ 3(b); ECF No. 23-5 (Deposition of Richard Perkins) at 21:14–17; ECF No. 23-2 (Affidavit of Trevor Sperry), ¶ 8.

The Agreement called for Olympus Pines to make an initial deposit of $50,000 into an escrow account within three business days of the Agreement's effective date of February 21, 2023. ECF No. 3-1, ¶ 2(a). Under the Agreement, Olympus Pines had 75 days—from February 21, 2023, until May 8, 2023—to perform due diligence (the "Due Diligence Period"). *Id.* ¶ 3(b). Paragraph 3(d) of the Agreement states, "In the event that [Olympus Pines] shall not be satisfied with the Property, for any or no reason, [Olympus Pines] shall have the right as its sole remedy, on or prior to 5:00 P.M. (Eastern Time) on the Due Diligence Termination Date, to give [Plaintiffs] written notice (the 'Due Diligence Termination Notice') of [Olympus Pines's] intention not to proceed with the consummation of the transaction contemplated by this Agreement." *Id.* ¶ 3(d). Proper notice under that section would release and discharge both parties from "all further obligation and liability under th[e] Agreement, and the Deposit, and all Interest accrued thereon" would "be immediately returned to [Olympus Pines] . . . ." *Id.* Alternatively, "[i]n the event that the Due Diligence Termination Notice is not sent to [Plaintiffs] on or prior to the Due Diligence Termination Date, [Olympus Pines] shall be deemed to have waived any termination rights pursuant to this Section 3 and the Deposit shall, except as set forth in this Agreement, be deemed fully earned and shall not be refundable to purchaser." *Id.* (emphasis omitted). If Olympus Pines did not terminate the Agreement, a second $50,000 deposit would be due to the escrow account within three days following the close of the Due Diligence Period. *Id.* ¶ 2(b).

Under ¶ 4 of the Agreement, Plaintiffs must provide a title report to Olympus Pines and, "[i]n addition, [Olympus Pines] may, at [Olympus Pines's] sole cost and expense and in its discretion, order a survey with regard to the Land . . . or use the survey provided by [Plaintiffs]." *Id.* ¶ 4. Under ¶ 4(a), "[p]rior to the Due Diligence Termination Date, [Olympus Pines] will provide [Plaintiffs] with a copy of the Title Commitment and the Survey and shall notify [Plaintiffs] in writing of any objections to title or matters shown on the Survey that are unacceptable to [Olympus Pines] . . . or [Olympus Pines] shall be deemed to have waived all such objections." *Id.* ¶ 4(a).

After the Due Diligence Period, Olympus Pines had 120 days—until September 4, 2023— to "use good faith efforts to obtain" zoning approvals, site plan approvals, and various other approvals necessary to develop the property as a retail car wash ("Approvals Period"). *Id.* ¶ 5(b)– (c). If, at the conclusion of the Approvals Period, Olympus Pines failed to receive the necessary approvals, it could either, at its sole option, extend the Approvals Period by two 60-day periods, or terminate the Agreement and receive its full $100,000 deposit. *Id.* ¶ 5(c).

The Agreement includes a provision for an award of reasonable attorneys' fees and court costs for the prevailing party if either party were to initiate litigation to enforce any provision of the Agreement or for damages by reason of an alleged breach. ECF No. 3-1, ¶ 22. Further, the Agreement is "governed by the laws of the State of Maryland." *Id.* ¶ 24(g).

B. Events Following Execution of the Agreement

After signing the Agreement, Olympus Pines timely paid the first $50,000 deposit. ECF No. 23-2, ¶ 15; ECF No. 23-5 at 56:1–3; ECF No. 23-8 (email confirming receipt of initial deposit fee). One day after signing the Agreement, Olympus Pines reviewed and analyzed due diligence materials provided by Plaintiffs, ECF No. 23-3 (Affidavit of Jill Koop), ¶¶ 7–9, and Olympus

3

Pines's Director of Development, Jill Koop, sent out requests for proposals to environmental and engineering firms to secure surveys and assessments, ECF No. 23, ¶¶ 9–20.

On February 22, 2023, the day after the parties signed the Agreement, Ms. Koop contacted Kimley Horn, an engineering firm, and on February 23, they discussed the scope of the survey. ECF No. 23-3, ¶ 10; ECF No. 23-12 (Feb. 22, 2023, email from Ms. Koop to Kimley Horn requesting a proposal); ECF No. 23-13 (Feb. 23, 2023, email from Kimley Horn discussing scope of survey). Kimley Horn provided Olympus Pines its proposal on March 3, ECF No. 23-3, ¶ 11; ECF No. 23-14 (Mar. 3, 2023, letter from Kimley Horn containing proposal), and Kimley Horn and Olympus Pines walked through the proposal less than a week later, ECF No. 23-3, ¶ 11; ECF No. 23-15 (emails between Jill Koop and Kimley Horn discussing bid).

Similarly, on February 22, Ms. Koop reached out to Atwell, another engineering firm. ECF No. 23-3, ¶ 12; ECF No. 23-16 (Feb. 22, 27, and 28 emails between Ms. Koop and Atwell regarding the proposal). Atwell sent its original proposal on March 1, ECF No. 23-3, ¶ 13; ECF No. 23-17 (Atwell's Mar. 1, 2023, proposal), and a revised proposal on March 11, ECF No. 23-3, ¶ 13; ECF No. 23-18 (Atwell's Mar. 11, 2023, proposal). Atwell provided a sample site development permitting plan specific to Prince George's County. ECF No. 23-3, ¶ 13; ECF No. 23-19 (Atwell's sample site plan). After analyzing the proposals, around March 31, 2023, Olympus Pines engaged with Atwell, which began its site development work around April 5. ECF No. 23-3, ¶ 14.

Ms. Koop also contacted Bowman to provide a survey of the property. *Id.* ¶¶ 15–16; ECF No. 23-20 (Mar. 9, 2023, email chain); ECF No. 23-21 (Mar. 10, 2023, email containing Bowman's proposal). Bowman met with Olympus Pines to discuss specific obstacles related to the site and then provided its survey. ECF No. 23-3, ¶¶ 16–17; ECF No. 23-22 (Mar. 9–10, 2023,

4

email chain discussing meeting about the site); ECF No. 23-23 (Mar. 24, 2023, email containing survey); ECF No. 23-24 (Apr. 11, 2023, email containing survey in different format).

On February 22, Ms. Koop also contacted an environmental firm to conduct an environmental assessment. ECF No. 23-3, ¶ 18; ECF No. 23-25 (Feb. 22–23, 2021 email chain). The firm submitted its proposal and executed a work agreement with Olympus Pines. ECF No. 23-3, ¶ 18; ECF No. 23-26 (Mar.–Apr. 2023, email chain); ECF No. 23-60 (work agreement). The firm contacted Plaintiffs to set up a site visit, ECF No. 23-3, ¶ 19; ECF No. 23-27 (Mar. 14, 2023, email chain); and sent its environmental assessment to Olympus Pines on April 18. The final assessment was completed a week later, and the firm met with Olympus Pines to examine its findings. ECF No. 23-3, ¶ 20; ECF No. 23-28 (Mar.–Apr. 2023, email chain); ECF No. 23-29 (Apr. 26, 2023, email chain). The initial environmental survey identified concerns that required further assessment, which the firm continued working on, meeting with Olympus Pines again on May 4, 2023. ECF No. 23-3, ¶ 23; 23-30 (May 4, 2023, meeting invitation); ECF No. 23-31 (May 4, 2023, email chain).

Olympus Pines conducted a door-to-door campaign introducing itself and its project to the neighborhood. ECF No. 23-3, ¶ 22. It worked with Atwell to create an approvable site plan, and Atwell produced different proposed site plans in April 2023. *Id.* ¶¶ 23–24; ECF Nos. 23-32, 23-33, 23-34, 23-35 (site plans). The layouts included property setbacks, elevation levels, site access points, easement markers, and Planning and Urban design layout requirements. ECF No. 23-3, ¶ 23. These details would be required to apply for, and to be granted, permitting approvals. *Id.* Throughout April and May 2023, Olympus Pines met with its engineers and surveyors to discuss the challenges specific to the site, including a rule prohibiting car wash service bays from being visible from the street, which created other layout issues. *Id.* ¶ 25; ECF No. 23-36 (May 3–4, 2023,

5

email chain). Olympus Pines ultimately determined that it was unlikely to receive the necessary approvals and decided to let go of the site. ECF No. 23-3, ¶ 26; ECF No. 23-2, ¶ 16.

### C. Olympus Pines's Attempted Termination and Following Events

As per the Agreement, the Due Diligence Period ended at 5:00 p.m. on May 8, 2023. ECF No. 23-5 at 90:3–9. On May 9, Olympus Pines emailed Plaintiffs a termination notice. ECF No. 23-2, ¶ 17; ECF No. 23-37 (May 9, 2023, email). After its purported termination, Olympus Pines and its consultants stopped working on the project. ECF No. 23-3, ¶ 27; ECF No. 23-38 (May 9, 2023, email). Plaintiffs rejected Olympus Pines's late termination, ECF No. 23-3, ¶ 28, and demanded that Olympus Pines make the second $50,000 deposit as required by the Agreement, to avoid default, ECF No. 23-5 at 61:16–62:14; ECF No. 23-10 (May 2023 email chain between parties) at 2. Plaintiffs stated that "[Olympus Pines] was not in default, so long as it posted that second deposit." ECF No. 23-5 at 61:16–62:14. After Plaintiffs rejected Olympus Pines's attempted termination, Olympus Pines sent an email stating in part, "[W]e are very disappointed by the position that you and your client are taking on this. If you are not willing to authorize the release of the initial deposit, then we will just have to lock up your client's land until the end of the Approvals Period and then terminate that [sic] that point (another 4 months from now) for failure to obtain Approvals, as we already know now that we will be unable to obtain the same." ECF No. 23-43 at 2. Olympus Pines timely transmitted the second deposit. ECF No. 23-2, ¶ 19; ECF No. 23-5 at 78:14–16. Olympus Pines attempted to explain to Plaintiffs the various site challenges it faced and shared the environmental assessment, site layouts, and other plans, including elevation drawings, operation and business plans, and a meeting with the County Supervisor for the district. ECF No. 23-2, ¶¶ 20–22; ECF No. 23-5 at 69:3–72:10; ECF Nos. 23-39, 23-40, 23-41, 23-42 (May 2023 emails between parties and environmental assessment).

Following the failed termination, Olympus Pines resumed its efforts to obtain approval. ECF No. 23-3, ¶ 28. Olympus Pines advised Plaintiffs that it would continue with the approvals process. ECF No. 23-43 (May 9–11, 2023, email chain); ECF No. 23-41 (May 11, 2023, email); ECF No. 23-2, ¶ 22. From May 9 to June 2, 2023, Olympus Pines worked on obtaining site approvals. *Id.* ¶¶ 28–31. These efforts included having Atwell develop four additional site layouts complete with setbacks, elevation levels, site access points, and easement markers, providing options compliant with applicable restrictions. ECF Nos. 23-44, 23-45, 23-46, 23-47; ECF No. 23-3, ¶ 29. Atwell also continued to work with Prince George's County officials to get a design approved, ECF No. 23-3, ¶ 30; ECF No. 23-48 (May 22–24, 2023, email chain); and Olympus Pines met with a councilmember, ECF No. 23-2, ¶¶ 24–25.

### D.  Plaintiffs' Termination of the Agreement

On June 2, 2023, less than a month after Olympus Pines made the second deposit, Plaintiffs served a "Notice of Default and Termination of Contract." ECF No. 23-49 (June 2, 2023, letter). Plaintiffs demanded that the escrow agent release the $100,000 in deposits to them, arguing that Olympus Pines defaulted under the Agreement in two ways. First, Plaintiffs argued that Olympus Pines defaulted when it did not deliver a title and commitment survey during the Due Diligence Period. *Id.* Second, Plaintiffs argued that Olympus Pines defaulted by failing to diligently pursue approvals in good faith. *Id.*

Additional facts will be discussed as necessary.

### E.  Procedural Background

After initial filing in the Circuit Court for Prince George's County, this case was removed to this Court on September 20, 2023. ECF No. 1. The Complaint was filed on September 21, 2023. ECF No. 3. Plaintiffs allege that Olympus Pines breached the Agreement by failing to pursue

7

approvals, failing to provide title and survey reports, and failing to release a deposit to Plaintiff, despite being required to do so by the Agreement. *Id.* ¶¶ 18, 22. Plaintiff also seeks Olympus Pines's $100,000 deposit in escrow and declaratory relief terminating the Agreement. *Id.* ¶¶ 21–24.

On September 27, 2023, Olympus Pines filed an answer and counterclaims against Plaintiffs. ECF No. 8. Olympus Pines alleges that Plaintiffs breached the Agreement by terminating it without cause, refusing to perform, and unlawfully demanding Olympus Pines's deposit. *Id.* ¶ 51. Olympus Pines also seeks a declaratory judgment declaring that Plaintiffs' termination was improper, and that Olympus Pines is entitled to seek costs, including, but not limited to, the return of its $100,000 deposit plus interest. *Id.* ¶¶ 54–58. Plaintiffs filed their response to the counterclaims on October 17, 2023. ECF No. 9.

On April 12, 2024, Plaintiffs filed a Motion for Summary Judgment, ECF No. 22, and Olympus Pines filed its opposition and Motion for Summary Judgment on May 3, 2024, ECF No. 23. Plaintiffs subsequently filed a reply on May 20, 2024, ECF No. 27, and Olympus Pines filed its own reply on May 28, 2024, ECF No. 29.

## II.     STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); see also *Raynor v.*

*Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts. *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

When both parties file motions for summary judgment, "the role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 729 (D. Md. 1996) (quoting *Towne Mgmt. Corp. v. Hartford Acc. And Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)). "Cross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist." *Id.* (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voight*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805 (1983)). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance

to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### III. DISCUSSION

Both parties move for summary judgment. ECF Nos. 22 & 23.

#### A. Plaintiffs' Motion for Summary Judgment

Plaintiffs claim that Olympus Pines breached the Agreement in three ways: (1) "failing to apply for and diligently pursue the Approvals" as required under the Agreement; and (2) failing to provide the Title Commitment and the Survey required under the Agreement; and (3) failing to release Olympus Pines's $100,000 escrow deposit to Plaintiff upon demand. ECF No. 3, ¶¶ 18, 22. Olympus Pines counterclaims that Plaintiffs breached the Agreement by "terminating [it] without cause, refusing to continue to perform, and unlawfully demanding [Olympus Pines's] deposit." ECF No. 8, ¶ 51. As explained below, the Court finds that Plaintiff is not entitled to summary judgment on any of its claims or on Olympus Pines's counterclaims.

##### 1. Olympus Pines's Alleged Failure to Pursue Approvals

Plaintiffs argue that they are entitled to summary judgment because there is no genuine dispute of material fact that Olympus Pines did not use good faith efforts to obtain approvals and did not apply for and diligently pursue all approvals. ECF No. 22-1 at 4–6. The Agreement contains language stating that, upon expiration of the Due Diligence Period, Olympus Pines was required to "use good faith efforts" to obtain zoning and site plan approvals, ECF No. 3-1, ¶ 5(b), and to "apply for and diligently pursue all Approvals for a period of [120] days[,]" *id.* ¶ 5(c). As evidence that Olympus Pines did not use good faith efforts to diligently pursue all approvals, Plaintiffs point to a lack of communication about Olympus Pines's progress in obtaining approvals throughout and following the Due Diligence Period and what they claim to be a lack of progress on the project.

ECF No. 22-1 at 5–6; ECF No. 27 at 3–7. Additionally, in their reply, Plaintiffs identify one email Olympus Pines sent to Plaintiffs' attorney on May 9, 2023, stating, in part, "If you are not willing to authorize the release of the initial deposit, then we will just have to lock up [Plaintiffs'] land until the end of the approvals period and then terminate that [sic] that point (another 4 months from now) for failure to obtain Approvals, as we already know now that we will be unable to obtain the same." ECF No. 23-43 at 2; ECF No. 27 at 2.

This Court finds that documents and deposition testimony in the record create a genuine dispute of material fact as to Olympus Pines's good faith efforts. First, after Plaintiffs rejected Olympus Pines's late termination, Olympus Pines made the second deposit required under ¶ 2(b) of the Agreement.

Second, Olympus Pines promptly rescinded its email to contractors that had instructed those contractors to stop working on the project. The email had originally been sent on May 9, 2023, following Olympus Pines's attempted termination and before Plaintiffs rejected that attempt. ECF No. 23-3, ¶ 27; ECF No. 23-38. That same day, Olympus Pines spoke with an engineer at Atwell asking the engineering firm to continue its work, which it agreed to do. ECF No. 23-3, ¶ 28. Also on May 9, 2023, Olympus Pines spoke with plaintiff Richard Perkins, explaining Olympus Pines's challenges in obtaining approvals, its plan to continue conversations with county officials, and its commitment to using food faith efforts to obtain approvals, and offered to provide Mr. Perkins with multiple documents, including the environmental assessment and site plans. ECF No. 23-2, ¶¶ 20–22; ECF Nos. 23-39, 23-40, 23-41, 23-42, 23-43.

Olympus Pines continued working on the site following the attempted termination. From May 9 to June 2, 2023, Olympus Pines worked on obtaining site approvals, ECF No. 23-3, ¶¶ 28–31, including having Atwell develop four additional site layouts complete with setbacks, elevation

11

levels, site access points, and easement markers, providing options compliant with applicable restrictions.[1] ECF Nos. 23-44, 23-45, 23-46, 23-47; ECF No. 23-3, ¶ 29. Atwell also sought assistance from the Prince George's County Planner to get a design approved, ECF No. 23-3, ¶ 30; ECF No. 23-48 (May 22–24, 2023, email chain), and Olympus Pines met with a councilmember on May 26, ECF No. 23-2, ¶¶ 24–25.

Third, although Plaintiffs were unaware of any actions Olympus Pines was taking in pursuit of approvals, ECF No. 23-5 at 25:2–6, 72:5–73:2, 81:10–82:6, 87:12–21 (Plaintiffs acknowledging that they did not know what Olympus Pines was doing to seek approvals), there is no requirement in the Agreement that Olympus Pines keep Plaintiffs informed of its efforts to obtain approvals, and Plaintiffs never asked for any information. *Id.* at 64:12–19; 65:8–19; *see generally* ECF No. 3-1.

Fourth, Plaintiffs terminated the Agreement 24 days into the Approvals Period, and Mr. Perkins, as a representative for P&S, testified that Plaintiffs would not have expected Olympus Pines to have submitted applications for approvals so early in the Approvals Period. ECF No. 23-5 at 75:15–19.

Because there is a genuine dispute of material fact as to whether Olympus Pines used good faith efforts to obtain approvals and diligently pursued approvals, Plaintiffs' Motion for Summary Judgment, ECF No. 22, must be denied as to Plaintiff's first claim for breach of contract.

### 2. Olympus Pines's Failure to Provide a Title Commitment and Survey

Plaintiffs argue that they are entitled to summary judgment because Olympus Pines breached the contract when it did not provide them with a copy of the title commitment and survey

---

[1] In their opposition, Plaintiffs aver that Atwell did not perform any work in the month of May. ECF No. 27 at 4 (citing ECF No. 23-62) (Atwell invoice for April 2023). In reply, Olympus Pines provided an Atwell invoice showing services rendered in May and June 2023. ECF Nos. 29-1, 29-2, 29-3.

before the end of the Due Diligence Period, that is, by 5:00 p.m. on May 8, 2023. ECF No. 22-1 at 5. Paragraph 4 of the Agreement provides, in relevant part:

> [Plaintiffs] shall provide [Olympus Pines] a recent title report and survey and [Olympus Pines] agrees to order at [Olympus Pines's] sole cost and expense, an update to such title report ("Title Commitment") of the Real Property from the Title Company. In addition, [Olympus Pines] may, at [Olympus Pines's] sole cost and expense and in its discretion, order a survey with regard to the Land (the "Survey") or use the survey provided by [Plaintiffs].

ECF No. 3-1, ¶ 4. The Agreement continues:

> Prior to the Due Diligence Termination Date, [Olympus Pines] will provide [Plaintiffs] with a copy of the Title Commitment and Survey and shall notify [Plaintiffs] in writing of any objections to title or matter shown on the Survey that are unacceptable to [Olympus Pines] . . . ; or [Olympus Pines] shall be deemed to have waived all such objections.

*Id.* ¶ 4(a).

While it is clear that Olympus Pines failed to timely provide a copy of the title commitment and survey required by ¶ 4(a), the Court cannot find that this failure constitutes a breach of the Agreement. The unambiguous language of the Agreement does not require, but rather permits, Olympus Pines to order survey and provide a copy of its title commitment and survey to Plaintiffs. Paragraph 4 states that Olympus Pines "may," at its "sole cost and in its discretion, order" a land survey. *Id.* ¶ 4. Paragraph 4(a) gives Olympus Pines the option of either (1) providing a copy of the title commitment and survey to Plaintiffs and notifying Plaintiffs of "any objections to the title or matter shown on the Survey" that Olympus Pines deems unacceptable; or, alternatively, (2) waiving any such objections. Here, Olympus Pines apparently opted not to provide a copy of the title commitment and survey to Plaintiff and thereby waived any objections to the title or matter shown on the survey. The Court finds as a matter of law that Olympus Pines's failure to provide a copy of the title commitment and survey to Plaintiffs was not a breach of the Agreement.

13

Plaintiff's interpretation of Paragraph 4(a) as imposing an obligation on Olympus Pines to provide a copy of the title commitment and survey is untenable. The portion of Paragraph 4 and precedes subparagraph (a) clear leaves it up to Olympus Pines whether to obtain a survey at all, "at [Olympus Pines's] sole cost and expense and in [Olympus Pines's] discretion[.]" *Id.* ¶ 4. If subparagraph (a) then required the survey to be provided to Plaintiffs, then the clearly permissive earlier language would be a nullity.

Moreover, to the extent that Olympus Pines's failure to provide the title commitment and survey was a breach, Plaintiffs waived it by their subsequent representations and conduct. "[A] party to an executory bilateral contract, who keeps the same in existence after a known breach by the other party and accepts further performance from the party who has committed the breach, waives the breach, in the absence of an assertion of his intention to retain the rights accruing to him as a result of said breach, assented to by the other party[.]" *Pumphrey v. Pelton*, 245 A.2d 301, 304 (Md. 1968) (quoting *John B. Robeson Assocs., Inc. v. Gardens of Faith, Inc.*, 172 A.2d 529, 533 (Md. 1961), *quoted in Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 558 (4th Cir. 2015). Here, after Olympus Pines's deadline passed, Plaintiffs required Olympus Pines to continue performing under the Agreement, demanding the second $50,000 deposit into escrow and offering advice when Olympus Pines informed Plaintiffs of their challenges obtaining the necessary approvals. ECF No. 23-10; ECF No. 23-42. By demanding and then accepting further performance, Plaintiffs waived any prior breach based on Olympus Pines's failure to provide a timely title commitment and survey. Furthermore, when Olympus Pines attempted to terminate the Agreement, Plaintiffs took the position that Olympus Pines could avoid default by posting the second deposit required by the Agreement, without mention of Olympus Pines's failure to provide the title commitment and survey. The day after Olympus Pines's deadline, Plaintiffs'

14

counsel stated, in part, "the second deposit must be posted to avoid a default under the [Agreement]." ECF No. 23-10 at 2. At his deposition, Mr. Perkins, P&S's designated representative, stated that as long as Olympus Pines posted the second deposit, it would not be in default. ECF No. 23-5 at 62:11–14.

For the foregoing reasons, Plaintiffs are not entitled to summary judgment on their second claim for breach of contract. The Court shall address Plaintiffs' third breach-of-contract claim in Part III.B *infra*.

### B.  Olympus Pines's Motion for Summary Judgment

Olympus Pines argues that it is entitled to summary judgment because there is no genuine dispute of material fact that Plaintiffs terminated the Agreement without cause, materially breaching the Agreement. In their termination letter, Plaintiffs cite two reasons for termination: (1) Olympus Pines's failure to act in good faith and with diligence, and failure to apply for approvals; and (2) Olympus Pines's failure to provide the title commitment and survey referenced in paragraph 4 of the Agreement. ECF No. 23-49. However, these arguments are unconvincing.

First, Olympus Pines has produced several exhibits showing that it was working on obtaining approvals and continued that work throughout the Approvals period, despite any belief that approval would be impossible to obtain. Before its attempted termination on May 9, 2023, Olympus Pines worked to obtain the necessary approvals by: (1) contacting three engineering firms to request proposals, ultimately selecting Atwell to perform work for the project, and contacting an environmental firm to conduct an environmental assessment, ECF No. 23-3, ¶¶ 9–22; (2) receiving an environmental assessment in April 2023, *id.* ¶ 20; ECF No. 23-28 (Apr. 17–18, 2023, email chain with draft of environmental survey); 23-29 (Apr. 26, 2023, email containing final environmental survey); (3) conducting community outreach, including a door-to-door campaign,

ECF No. 23-3, ¶ 22; (4) having Atwell, produce two site layouts, ECF Nos. 23-32, 23-33, 23-34, 23-35; and (5) meeting with Atwell in an effort to find a solution to the zoning issues and site restrictions, ECF No. 23-3, ¶¶ 25–26. Following its attempted termination and in the month before Plaintiffs terminated, Olympus Pines continued its efforts by: (1) having Atwell provide four additional site layouts, ECF Nos. 23-44, 23-45, 23-46, 23-47; ECF No. 23-3, ¶ 29; (2) having Atwell seek assistance from the Prince George's County Planner to get a design approved, ECF No. 23-3, ¶ 30; ECF No. 23-48; and (3) meeting with a councilmember on May 26, ECF No. 23-2, ¶¶ 24–25. Plaintiffs have produced no evidence to rebut to Olympus Pines's showing that it diligently pursued approvals up until June 2, 2023, when Plaintiffs terminated the contract.

Olympus Pines was only 24 days into the 120-day Approvals Period when Plaintiffs terminated the contract. The deposition testimony of Mr. Perkins, as a representative for P&S, shows that, at the time of their termination, Plaintiffs were unaware of the work Olympus Pines was performing during the Approvals Period, and Plaintiffs had not asked for updates on that work. ECF No. 23-5 at 25:2–6, 64:12–19; 65:8–19, 72:5–73:2, 81:10–82:6, 87:12–21. Mr. Perkins testified that Plaintiffs would not expect a purchaser to apply for approval early in the Approvals Period, ECF No. 23-5 at 75:15–19, which, in this case, was 120 days with the right for Olympus Pines to extend that period for two additional 60-day periods, ECF No. 3-1, ¶ 5(b)–(c). Thus, Plaintiffs terminated the Agreement before Olympus Pines even had a reasonable opportunity to apply for the necessary approvals. ECF No. 23-49.

Plaintiffs' handling of its Agreement with Olympus Pines stands in contrast with how they handled two contracts they had with another party, Flagship. Flagship did not keep Plaintiffs updated on its progress, ECF Nos. 23-54 (Oct.–Nov. 2022 email chain), was not required to do so based on Flagship's silence, and had the property for much longer without applying for site

16

approval, ECF No. 23-51 (contract executed on June 6, 2022); ECF No. 23-55 (Nov. 30, 2022, Flagship's notice of termination); 23-56 (second contract executed on Nov. 21, 2023); ECF No. 23-59 (sixth amendment to contract extending the Due Diligence Period to May 10, 2024). On its first contract, Flagship held the property for 177 days and at least another 171 days on its second contract without applying for any approvals. Olympus Pines here only held the property for 101 days. In contrast to their dealings with Olympus Pines, Plaintiffs did not declare default in either contract with Flagship, despite Flagship's extended period holding the property without applying for approvals. *See* ECF No. 23-55 (Flagship's notice of termination). In fact, Plaintiffs agreed to six amendments to their agreement with Flagship, extending Flagship's due diligence period. *See* ECF No. 23-59 (Sixth Amendment to Agreement of Sale extending the due diligence period).

Plaintiffs also cited Olympus Pines s failure to provide a copy of its title commitment and survey to Plaintiff as justification for terminating the Agreement. As explained in Part III.A.2 *supra*, the Court finds that Olympus Pines's failure to provide the title commitment and survey was not a breach of the Agreement at all—much less a material breach that could justify Plaintiffs' termination. While any breach of contract may give rise to a cause of action for damages, "only a material breach discharges the non-breaching party of its duty to perform." *Jay Dee/Mole Joint Venture v. Mayor & City Council of Baltimore*, 725 F. Supp. 2d 513, 526 (D. Md. 2010) (citing Restatement (Second) of Contracts § 236 cmt. a. and 23 Williston on Contracts § 63:3 (4th ed.)). Under Maryland law, a breach is material only "if it affects the purpose of the contract in an important or vital way." *Id.* (quoting *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005); *see also Publish Am., LLP v. Stern*, 84 A.3d 237, 249 (Md. Ct. Spec. App. 2014) ("Whether a breach is considered material is a question of fact, unless the question is 'so clear that a decision can properly be given only one way, and in such a case the court may properly decide

the matter as if it were a question of law.'") (quoting *Speed v. Bailey*, 139 A. 534, 537 (Md. 1927). Here, Plaintiffs make no showing that Olympus Pines's failure to provide a title commitment and survey affected the purpose of the Agreement in a vital way. The purpose of the Agreement was to purchase a tract of land to develop a retail car wash. Olympus Pines has produced evidence that it was continuing its efforts to do exactly that, regardless of its failure to provide the title commitment and survey.

Even drawing all facts and inferences in Plaintiffs' favor, Plaintiffs fail to create a genuine dispute of material fact to support their contention that their termination of the Agreement was proper. Therefore, Olympus Pines's Motion for Summary Judgment shall be granted, and Plaintiffs' claim to Olympus Pines's $100,000 deposit fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment, ECF No. 22, will be DENIED and Olympus Pines's Motion for Summary Judgment, ECF No. 23, will be GRANTED.

A separate Order will follow.

| | |
|---|---|
| 3/31/25 | |
| Date | Matthew J. Maddox |
| | United States District Judge |